Eastern District of Kentucky
F I L E D

JAN - 8 2018

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

Civil Action No. 16-192

JAMI NICHOLS,                                              PLAINTIFF,

v.                **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits in June 2013, alleging disability beginning in September 2011, due to "asthma, incontinence, flailed chest/rib, knee pain, impaired vision in the left eye [and] depression" (Tr. 188). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Jonathon Stanley (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Robert Piper, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled Plaintiff was 56 years old at the time of the alleged onset of disability. She has a Master's degree in counseling and past relevant work as a counselor and educational program director at Eastern Kentucky University (Tr. 189).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 21).

The ALJ then determined, at Step 2, that Plaintiff suffers from obesity; degenerative joint disease of the knees; left ankle and foot pain; asthma; and a variety of eye-related impairments, including choroidal neovascularization (abnormal blood vessel growth), progressive degenerative myopia, and cataracts, which he found to be "severe" within the meaning of the Regulations (Tr. 22).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any

2

of the listed impairments (Tr. 25). In doing so, the ALJ specifically considered Listing 1.00 (Tr. 25).

The ALJ further found that Plaintiff could perform her past relevant work (Tr. 27) and also determined that she has the residual functional capacity ("RFC") to perform light work with the following restrictions: occasional pushing and pulling using the lower extremities bilaterally; occasional climbing of stairs and ramps, but never of ropes, ladders, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent reaching overhead bilaterally; frequent reading of computer screens and fine print and handling of small objects; no concentrated exposure to temperature extremes, pulmonary irritants, or vibration; and ability to avoid ordinary hazards in the workplace, but no work at unprotected heights or around hazards such as heavy equipment. (Tr. 25).

Accordingly, the ALJ found Plaintiff not to be disabled.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner . Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner*

*v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

**B.     Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) Plaintiff satisfies the criteria for presumptive disability at Step 3 and (2) the ALJ improperly discounted the opinion of Plaintiff's treating ophthalmologist, Andrew Moshfeghi.

**C.     Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that Plaintiff satisfies the criteria for presumptive disability at Step 3.

The Sixth Circuit Court of Appeals stated in *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999), "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including proving presumptive disability by meeting or exceeding a Medical Listing at step three. Thus, Plaintiff "bears the burden of proof at step three to demonstrate that she has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *Arnold v. Commissioner of Social Security*, 238 F.3d 419, 2000 WL

4

1909386, *2 (6th Cir. 2000 (Ky)), *citing Burgess v. Secretary of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). If the Plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Secretary of Health and Human Services*, 835 F.2d 139, 140 (6th Cir. 1987).

"The listing of impairments 'provides descriptions of disabling conditions and the elements necessary to meet the definition of disabled for each impairment." *Arnold*, at **2, quoting *Maloney v. Commissioner,* 211 F.3d 1269, 2000 WL 420700 (6th Cir. 2000). In order for the Plaintiff "to qualify as disabled under a listed impairment, the claimant must meet all the requirements specified in the Listing." *Id.* As the Defendant notes, this must be done by presenting specific medical findings that satisfy the particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-532, (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Sullivan*, at 530.

Plaintiff claims that her severe impairments establish that she meets the requirements for the Listings and that failed to consider her obesity as it pertains to the Listings.

Notwithstanding Plaintiff's blanket assertion that she "meets the Listed impairments," the only Listing she identifies and provides argument for is 12.04.

Listing 12.04 provides:

> *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the

5

following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
I. Hallucinations, delusions or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractability; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medications or psychological support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such

marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.04.

Listing 12.06 provides:
Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning;
or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or

7

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.06.

For a mental disorder to satisfy Listing 12.04, Plaintiff must either meet the requirements in both the "A" and "B" criteria or meet the requirements of the "C" criteria; for a mental disorder to satisfy Listing 12.06, Plaintiff must meet the "A" criteria and either the "B" or "C" criteria.

The ALJ found that the record only supported the presence of a "non-severe" adjustment disorder—that is, the impairment did not "significantly limit" her "ability to do basic work activities" (Tr. 24). *See* 20 C.F.R. § 404.1521(a). The ALJ noted that "the record at most shows temporary bouts of mild depression and/or anxiety treated by the primary care practitioner with medication adjustments but no referrals for mental health intervention" (Tr. 24). Further, Plaintiff's daily activities included driving, running errands, interacting with friends and family (with whom she gets along "fine—no problems") and caring for her father (Tr. 24; *see* Tr. 346). She also reported that she handles criticism well, keeps up with her bills, is good at making decisions, and usually meets deadlines (Tr. 24; *see* Tr. 346). Consistent with the opinions of two state agency psychologists and a consulting psychologist, the ALJ found that Plaintiff had no difficulties in social functioning or maintaining concentration, persistence, or pace, only mild

8

restrictions in her activities of daily living, and no episodes of decompensation (Tr. 24; *see* Tr. 95-96, 109-10, 343-47). Plaintiff herself, in describing her chief complaints, did not mention depression (Tr. 336, 343), and she had never been hospitalized for psychiatric care (Tr. 345). The Court finds no error in the ALJ's assessment of the evidence pertaining to Plaintiff's mental functioning.

As for her obesity, although there is no obesity listing, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02–1p.

Plaintiff urges that the ALJ failed to consider her obesity. Yet, the hearing decision shows that the ALJ did, in fact, consider it, finding, however, that "despite her obesity", she has "normal posture and gait." (Tr. 25). The ALJ's RFC finding also reasonably accounted for Plaintiff's obesity. Of note, the ALJ gave great weight to the opinions of Drs. Burchett and Mukherjee, and both doctors' assessments took into account Plaintiff's obesity (Tr. 26-27; 111-14, 336-41).

There is simply no merit to Plaintiff's argument that the ALJ failed to consider obesity.

Plaintiff's second claim of error is that the ALJ improperly discounted the opinion of Plaintiff's treating opthalmologist, Andrew Moshfeghi.

In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. See SSR 96–2p, 1996 WL 374188 (July 2,

1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004). If the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

There is an additional procedural requirement associated with the treating physician rule; he ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5.

The only opinion in the record attributed to Dr. Moshfeghi is his suggestion that Plaintiff "may have difficulties with tasks that require fine visual discrimination or require binocular vision with good stereo visual acuity" (Tr. 363). Given the vague and speculative nature of this statement, the ALJ was correct in not adopting it wholesale. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (unpublished) (affirming where the ALJ discounted treating source opinion in part because the limitations identified by the doctor were too unclear to be helpful).

10

Moreover, Dr. Moshfeghi's other observations regarding Plaintiff belie any suggesting of extreme impairment: her near normal vision in the non-affected right eye with visual acuity of 20/25; her ability to legally drive in the state of Kentucky;5 and "her overall visual function [which] would not preclude her from performing gross tasks" (Tr. 26; *see* Tr. 363-64). Earlier in the decision, the ALJ also noted that Dr. Moshfeghi's opinion indicated that Plaintiff's choroidal neovascularization was stable and had "responded well" to treatment (Tr. 23; *see* Tr. 363).

The ALJ clearly took into account Plaintiff's vision impairments. However, to the extent that Plaintiff maintains that her impairments in this regard render her unable to perform any work activity, the record does not support such a finding. To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors her claim, the Court declines to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005).

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This ____ day of _____, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

12